# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LT. COL. ALEXANDER VINDMAN

                Plaintiff,

    v.

DONALD TRUMP, JR., RUDOLPH GIULIANI,
JULIA HAHN, and DANIEL SCAVINO, JR.,

                Defendants.

Civil Action No. 1:22-cv-00257-JEB

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

### I.      PRELIMINARY STATEMENT

In his Complaint [Doc. 1], Plaintiff Lt. Col. Alexander Vindman ("Lt. Col. Vindman" or "Plaintiff") has sued Defendant Rudolph Giuliani ("Giuliani") for two causes of action under 42 U.S.C. § 1985(1)-(2).  Plaintiff relies on two Tweets from Giuliani that do not mention Plaintiff by name as the basis of his causes of action.  Plaintiff also claims Giuliani was part of a broader conspiracy to engage in "intimidation and retaliation" against Plaintiff for his testimony provided to Congress.  As will be discussed below, Plaintiff's claims are entirely implausible, inadequately pleaded, and, in any event, are barred by the First Amendment. As a result, Plaintiff has failed to state any claim upon which relief can be granted as against Giuliani, the Complaint should be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

## II.      PERTINENT FACTS

The following are the pertinent facts as alleged in the Complaint, referred to in the Complaint, or which the Court can take judicial notice of:[1]

Plaintiff identifies two overt actions of Giuliani as the basis of his claims.  First, Plaintiff points to a Tweet from Giuliani published on October 29, 2019 ("First Tweet"):



Complaint at ¶ 124.

---

[1] In deciding a motion under Rule 12(b)(6), a court may take judicial notice of public records from other proceedings. *See, e.g., Covad Commc'ns Co. v. Bell Atlantic Co.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (permitting judicial notice of facts contained in public records of otherproceedings).  A court may also take judicial notice of historical, political, or statistical facts, or any other facts that are verifiable with certainty. *Mintz v. FDIC*, 729 F. Supp. 2d 276, 278 n.5 (D.D.C. 2010) (internal citation omitted).  A court may also consider matters referenced in the plaintiff's complaint. *See Scott v. Dist. Hosp. Partners, L.P.*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014), *aff'd*, 715 F. App'x 6 (D.C. Cir. 2018).

The second is a Tweet from Giuliani published the next day on October 30, 2019 ("Second Tweet" and, collectively, the "Tweets"):



Complaint at ¶ 125.

According to the Complaint, these Tweets by Giuliani constituted a "false and malicious attack" in "direct retaliation" for Plaintiff truthfully testifying before Congress. *Id.* at ¶ 123. The Complaint also claims these Tweets accuse Plaintiff of "disloyalty" to the United States and "working for the Ukrainian government". *Id.* at ¶¶ 123-25.

While these Tweets are the only overt acts of Giuliani listed in the Complaint, the Complaint accuses Giuliani of conspiring with the other Defendants to "concerted effort to falsely portray Lt. Col.

Vindman as disloyal to the United States, as a spy for a foreign country, and as a politically motivated saboteur." *Id.* at ¶¶ 250, 261. The Complaint further accuses Giuliani of conspiring to "falsely accuse [Plaintiff] of leaking classified information and perjury." *Id.* The Complaint contends that Giuliani entered into this alleged conspiracy for the purpose of: (1) intimidating Plaintiff from testifying in the impeachment proceedings and other proceedings implicating former President Trump and (2) intimidating Plaintiff from continuing to hold his office and to retaliate against Plaintiff for doing so. *Id.*

### III.    SUMMARY OF ARGUMENT

Plaintiff brings two consolidated causes of action against Giuliani and the other Defendants under 42 U.S.C. § 1985(1)-(2). *See* Complaint at Counts I and II. The Court should dismiss the Complaint in its entirety against Giuliani for at least three (3) reasons. First, the Complaint is implausible on its face. Second, the Complaint is inadequately pleaded. Finally, even if the Complaint were plausibly and adequately pleaded, the First Amendment bars the claims.

### IV.    ARGUMENTS AND AUTHORITIES

### A.    Overview Of Pertinent Legal Standards.

### 1.    FED. R. CIV. P. 12(b)(6) – Failure To State A Claim.

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must contain sufficient factual allegations that, if accepted as true, would state a plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Instead, plaintiffs must "nudge[ ] their claims across the line from conceivable to plausible." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In addition, a Rule 12(b)(6) motion is a proper vehicle for dismissal on an affirmative defense when the facts that give rise to the defense are clear from the face of the complaint. *See Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 306 (D.D.C. 2015). Moreover, where a plaintiff is a public official—

as is the case here—tort claims based on the defendant's exercise of First Amendment rights, the plaintiff must plausibly plead that the defendant acted with actual malice. See Tah v. Glob. Witness Publ'g, Inc., 991 F.3d 231, 240 (D.C. Cir. 2021). The actual malice standard applies to all claims involving free speech – not just defamation claims. See id. at 243 (applying to false light claims); Montgomery v. Risen, 197 F. Supp. 3d 219, 267 (D.D.C. 2016), aff'd, 875 F.3d 709 (D.C. Cir. 2017) (applying to common law assault claim).

      2.        **Special Pleading Standards For Claims Under 42 U.S.C. § 1985.**

Section 1985(1)-(2) makes it unlawful for "two or more persons ... [to] conspire to prevent, by force, intimidation, or threat, any person ... from discharging any duties [of public office]; ... or to injure him in his person or property on account of his lawful discharge of the duties of his office" and also to do so for the purpose of deterring witness testimony.  42 U.S.C. § 1985(1)-(2).  Among other things, Section 1985 plaintiffs must allege the elements of civil conspiracy, including: "an agreement to take part in an unlawful action or a lawful action in an unlawful manner."  *Hall v. Clinton*, 285 F.3d 74, 83 (D.C. Cir. 2002).  The elements of civil conspiracy consist of: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.  *See Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983).  A plaintiff must allege a "meeting of the minds" as to some improper purpose, as it is an essential element of a conspiracy claim under Section 1985. See Graves v. United States, 961 F. Supp. 314, 320 (D.D.C. 1997).

A plaintiff must also allege a causal connection between the overt act(s) taken in furtherance of the conspiracy and the alleged injury.  *See id. at 321.*  Moreover, the plaintiff must allege these elements with particularity.  *See Leon v. Murphy*, 988 F.2d 303, 310–11 (2d Cir.1993).  Finally, where the plaintiff is a public official, the protections of the First Amendment apply to a Section 1985 claim.  *Barr v. Clinton*, 370 F.3d 1196, 1203–04 (D.C. Cir. 2004) ("[W]e hold that First Amendment protections apply to section 1985 claims[.]").  Accordingly, in addition to the normal heightened pleading standards imposed on a Section 1985 claim, Plaintiff here must also allege plausible facts sufficient to demonstrate actual malice.

**B.      Plaintiff's Claims Are Facially Implausible**.

Plaintiff's claims as against Giuliani are facially implausible.

First, the First Tweet cannot fall under Section 1985(1) or 1985(2) because there is no reasonable reading of Giuliani's Tweets that could be construed as either seeking to prevent Plaintiff from holding office, discharging his duties, seeking to injure Plaintiff as the result of discharging his duties, or seeking to deter Plaintiff from testifying or injure him for testifying.  The First Tweet—which is primarily targeted toward Congressman Adam Schiff—merely poses, in the form of a question "A US gov. employee who has reportedly been advising two gov's?"  This is not phrased in the form of a statement of fact, but of a question of what has been "reported".  And to be sure, the *New York Times* had reported the previous day that:

> While Colonel Vindman's concerns were shared by a number of other officials, some of whom have already testified, he was in a unique position. **Because he emigrated from Ukraine along with his family when he was a child and is fluent in Ukrainian and Russian, Ukrainian officials sought advice from him about how to deal with Mr. Giuliani**, though they typically communicated in English.[2]

Plaintiff admitted in his testimony that he was offered a position in the Ukrainian government as defense minister.[3]

The First Tweet then goes on to say "[n]o wonder he is confused and feels pressure."  This is, at worst, a conjectured opinion based on the reports regarding Plaintiff.  There is no plausible/reasonable reading of this Tweet that can in any way be construed as "force, intimidation, or threat" to prevent Plaintiff from holding office or discharging his duties or seeking to injure Plaintiff as the result of discharging his duties.  If this were the case, every time social media reacts negatively to Congressional testimony or draws opinions as to motives for the character of Congressional testimony, then Section 1985 applies.  This cannot

---

[2]      *See*                      https://www.nytimes.com/2019/10/28/us/politics/Alexander-Vindman-trump-impeachment.html?searchResultPosition=1 (last visited May 31, 2022) (emphasis added).

[3]      *See*     https://www.rferl.org/a/vindman-u-s-national-security-official-impeachment-ukraine-defense-minister/30281033.html (last visited May 31, 2022).

be the law.  To the extent the Complaint relies on the First Tweet as an overt act of "force, intimidation, or threat", it must be dismissed.

For the same reasons, the Second Tweet also cannot be one of "force, intimidation, or threat".  The Tweet—which once again concerns Congressman Schiff—to the extent it concerns Plaintiff, simply says, "Schiff is thanking him for his secret testimony and for giving advice to two countries.  I thought he worked for US."  This is nothing more than a carryover of Giuliani's opinions stated in the First Tweet.  He is criticizing Rep. Schiff for thanking Plaintiff for his testimony.  No ordinary reasonable reader could construe the Tweets as being forceful, intimidating, or threatening.  They are nothing more than expressions of opinion about Plaintiff's testimony and his motivations for same.  Even if they were statements of fact – there is still nothing in the statements that would indicate force, intimidation, or threat against Plaintiff.  The Tweets were not even directed at Plaintiff – they were Giuliani's public commentary on Plaintiff's public testimony.  If Giuliani's Tweets violate the Ku Klux Klan Act, then literally every social media posting that calls into question the motivations of witnesses testifying before Congress violates Section 1985, which cannot be true.  The claims, as based on Giuliani's Tweets, are facially implausible and should be dismissed.

In addition, Giuliani's participation in any conspiracy with the other Defendants is also implausible.  As the Complaint admits, there is no evidence anyone knew that Plaintiff would testify at the impeachment hearings until the day prior to the hearing, on October 28, 2019 when the *New York Times* ran a story on Plaintiff and gave preview of his testimony.  Complaint at ¶ 105.  Although Plaintiff claims on "information and belief" the Defendants knew of this testimony sooner, there is no evidence or plausible allegations they did.  Therefore, according to Plaintiff's own admissions, Giuliani's conspiracy must have occurred within hours of the *Times* article wherein Giuliani and the other Defendants had a "meeting of the minds" to do all of the conspiratorial undertakings as to Plaintiff.  There is no allegation, must less a plausible one, that the Defendants had any meeting of the minds or any communication whatsoever regarding Plaintiff in the

October 2019 time frame when Giuliani's alleged "intimidating" Tweets and the alleged conspiracy occurred.  Therefore, the conspiracy allegations are facially implausible.

### C.       Plaintiff Has Failed To Adequately Plead The Claims.

Even if Plaintiff's claims were plausible, they are nonetheless inadequately pleaded.  Plaintiff has failed to allege actual malice as required by the First Amendment.  In addition, Plaintiff has failed to plead conspiracy with the particularity required by Section 1985.

### 1.       Failure To Plead Actual Malice.

As discussed above, where a public official brings a tort claim based on speech, the First Amendment requires the plaintiff to plead and prove actual malice.  This type of pleading requires more than "labels and conclusions" and a simple reference to the relevant legal standard. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). The ill-will or wrongful motivation of the defendant is not sufficient to demonstrate actual malice.  *See Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 90 (D.D.C. 2012); *see also Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications—inspired by political differences or otherwise— do not impact whether defendants acted with actual malice as a matter of law.").

Rather, Plaintiff must show that Giuliani made the statements complained of with knowledge that the statements were false or with reckless disregard as to whether they were true or false.[4]  *See McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1301 (D.C. Cir. 1996).  In order to prove that a statement was made with reckless disregard for the truth, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth" of his statements.  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).

---

[4] As discussed below, Giuliani contends the Tweets are not verifiable statements of fact but are rather statements of protected opinion.  However, for purposes of pleading, Plaintiff was and is required to plead out detailed facts showing why Giuliani knew the statements in the Tweets were false.

Here, Plaintiff complains of two statements made by Giuliani that concern Plaintiff "advised" and/or "worked" for Ukraine and whether he was "confused and felt" pressure during his testimony. As discussed above, the *Times* had already published an article alleging that Plaintiff did, in fact, advise Ukrainian officials on how to deal with Giuliani. Moreover, Plaintiff admitted that he was offered a position as Ukraine's defense minister. These revelations alone could cause a reasonable person to believe that Plaintiff—whose family immigrated from Ukraine—had divided loyalties between the U.S. and Ukraine and that he was, in fact, serving Ukrainian interests by advising Ukraine on Giuliani. Moreover, the fact that Plaintiff was offered the position of defense minister in Ukraine would raise a strong suspicion that Plaintiff has, at minimum, less than an arms-length relationship with Ukraine.

For these reasons, not only has Plaintiff failed to adequately allege—other than purely conclusory statements—that Giuliani made the Tweets with actual malice as to their truth, but actual malice is negated as a matter of law because the Tweets were substantially true. To the extent that the truth or falsity of the statements rests on the subjective mental state of Plaintiff, then it would have been impossible for Giuliani to know the statements were false because Giuliani could never "know" the state of Plaintiff's mind or motivations.

### 2.     Failure To Plead Conspiracy With Particularity.

As discussed above, a Section 1985 claim must be pleaded with particularity. Plaintiff's Section 1985 Claim is not pleaded with sufficient particularity. Plaintiff has failed to particularly plead conspiracy – a necessary element of a Section 1985 claim.

First, Plaintiff has not pleaded the particularization of an agreement between Giuliani and the alleged co-conspirators as he is required to do. Plaintiff has pleaded no specific facts that would give rise to an inference that Giuliani and all other Defendants agreed and had a meeting of the minds on the far-sweeping plot that Plaintiff alleges in his Complaint – namely to engage a public disparagement campaign to harm Plaintiff. Plaintiff has not, and cannot, allege the particulars of any meeting between all of the

Defendants wherein they came to a meeting of minds to engage in an elaborate plot to threaten, harass, or intimidate Plaintiff.

In the Complaint, Plaintiff does nothing other than make the conclusory assertion that "on information and belief" that Giuliani "coordinated" his efforts with other Trump supporters to spread the "same narrative". Plaintiff provides no requisite specificity of the details of this alleged meeting of the minds and would have the Court believe that simply being a Republican and friend of Trump thereby gives rise to the inference that he was part of a vast conspiracy with multiple other Trump supporters. This is far too flimsy of an allegation to survive a Rule 12(b)(6) motion to dismiss. Evidence of a shared objective or political agenda is not enough to show conspiracy. *See United States ex rel. PCA Integrity Assocs., LLP v. NCO Fin. Sys., Inc.,* No. CV 15-750 (RC), 2020 WL 686009, at *30 (D.D.C. Feb. 11, 2020) (dismissing conspiracy claim where, like here, plaintiff only alleged a shared conspiratorial objective or "plan").

There is no allegation in the Complaint of the time, place, and manner of how the Defendants came to a meeting of the minds and reached an agreement on the course of action Plaintiff complains of. Because Section 1985 claims are subject to a heightened pleading standard, Plaintiff was required to—but did not— plausibly alleged the "who, what, where, when" of the supposed meeting of the minds and agreement of the conspirators. See *id.* Accordingly, the claims must be dismissed.

### D.  The First Amendment Bars The Claims.

Even were Plaintiff's claims plausibly and adequately pleaded, they are nonetheless barred by the First Amendment. Regardless of the cause of action Plaintiff pleads, all of his claims ultimately complain of protected opinions, governmental criticisms, political expressions, and rights of association of Giuliani. Multiple authorities weighing the limits of the First Amendment have forbidden liability for speech far more incendiary than the speech complained of in this case.

In *Hess v. Indiana*, 414 U.S. 105, (1973), the Supreme Court reversed the conviction of an antiwar demonstrator. In *Hess*, during a demonstration on the campus of Indiana University, approximately 100 to 150 of the demonstrators moved onto a public street and blocked the passage of vehicles. *Id.* at 106.

When the demonstrators did not respond to verbal directions from the sheriff to clear the street, the sheriff and his deputies began walking up the street, and the demonstrators in their path moved to the curbs on either side, joining a large number of spectators who had gathered.  *Id.*  Hess, the relevant antiwar demonstrator, was standing off the street as the sheriff passed him.  *Id.*  Hess was arrested for disorderly conduct for saying "We'll take the fucking street later," or "We'll take the fucking street again."  *Id.* at 107.

The Indiana Supreme Court upheld Hess's conviction on the theory that—similar to Plaintiff's theory here— Hess' statement was intended to incite further lawless action on the part of the crowd in his vicinity and was likely to produce such action.  *Id.* at 108.  In reversing, the Supreme Court held that, viewing Hess' speech in the light most favorable to the State of Indiana, "it amounted to nothing more than advocacy of illegal action at some indefinite future time".  *Id.*  The *Hess* Court rested its holding on the basis that "[u]nder our decisions, 'the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'") *Id.* (quoting *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969)).  Clearly, Giuliani's Tweets at their theoretical worst were not a call for any unlawful conduct against Plaintiff whatsoever and are nothing even remotely compared to the speech in *Hess.*

Likewise, in *Terminiello v. City of Chicago*, 337 U.S. 1 (1949) the Supreme Court overturned a conviction under a statute that "permitted conviction […] if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest" because a "conviction resting on any of those grounds may not stand" under the First Amendment.  *Id.* at 5.  Thus, even if it were the case that some persons were stirred to action by Giuliani's Tweets that caused them to act negatively toward Plaintiff, this is still not sufficient to impose liability on Giuliani.  Only speech that presents a "clear and present danger" tantamount to the proverbial yelling "fire" in a crowded theater may be prohibited.  *See id.*

Simply put, regardless of how artfully Plaintiff pleads his claims, the First Amendment simply does not permit action based on Giuliani's Speech.  There is no plausible way to construe the Tweets to inciting

11

a clear and present danger of violent or other unlawful action.  The First Amendment bars all claims and causes of action based on Giuliani's Tweets that are critical of Plaintiff.  It would be unconstitutional to subject Giuliani to liability for the expressions Plaintiff complains of.

Finally, and in any event, the Tweets are protected opinions.  "[A] statement of opinion is actionable only if it has an explicit or implicit factual foundation and is therefore 'objectively verifiable.'"  *Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996) (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22 (1990)). "[I]f it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable."  *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993)).  Giuliani's Tweets are obviously not claims of objectively verifiable assertions of fact but rather Giuliani's subjective views/conjectures on Plaintiff's state of mind, motivations, and his own characterizations of Plaintiff's testimony.  The public at large was free to review Plaintiff's testimony and the *Times* report for themselves to determine whether they agreed with Giuliani's conclusions that Plaintiff may have had conflicts of interest with Ukraine.  These portions of the Tweets are subjective interpretations or theories drawn from the disclosed facts of Plaintiff's testimony and news reports and, as such, are protected. *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 365 (D. Mass. 2017).

And as for Plaintiff's state of mind and motivation, a number of courts have recognized that a person's motivations "can never be known for sure," even by that person.  *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993); *accord Greenspan v. Random House, Inc.*, 859 F. Supp. 2d 206, 224 (D. Mass. 2012) (concluding that statement about a person's motivations for filing a lawsuit "cannot objectively be proven as true or false"); *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1147 (8th Cir. 2012) (noting that statements concerning a person's motivations for committing suicide were not objectively verifiable); *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879, 886 (S.D. Ohio 2004) ("[T]here are no objective tests to determine [a person's] internal motivation.").  Here, Plaintiff's motivation for providing

the testimony he did and whether he was "confused" or "felt pressure" is not within the purview of objectively verifiable fact.

## V.    CONCLUSION

For all of the reasons discussed herein, the Court should dismiss the Complaint for failure to state a claim upon which relief can be granted.

Date:  May 31, 20212

Respectfully submitted,

By: */s/ Joseph D. Sibley IV*

CAMARA & SIBLEY L.L.P.

Joseph D. Sibley IV
DC Bar ID: TX0202
1108 Lavaca St.
Suite 110263
Austin, TX 78701

Telephone:  (713) 966-6789
Fax:  (713) 583-1131
Email:  sibley@camarasibley.com

**ATTORNEYS FOR RUDOLPH GIULIANI**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31ST day of May, 2022, I electronically filed the foregoing motion— together with the accompanying proposed order and memorandum of law—with the Clerk of the Court using the CM/ECF system, which I understand to have caused service on all counsel of record.

*/s/ Joseph D. Sibley IV*
Joseph D. Sibley I