**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| LT. COL. ALEXANDER VINDMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 1:22-cv-00257-JEB |
| | ) | |
| DONALD TRUMP, JR., | ) | |
| RUDOLPH GIULIANI, | ) | |
| JULIA HAHN, and | ) | |
| DANIEL SCAVINO, JR., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM IN SUPPORT OF
DEFENDANT JULIA HAHN'S MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 2

LEGAL STANDARD ....................................................................................................... 8

ARGUMENT .................................................................................................................... 8

I.    Plaintiff's Complaint Does Not State a Claim Against Hahn Under
      42 U.S.C. § 1985. .................................................................................................... 9

      A.    Plaintiff fails to allege facts establishing that Hahn entered into
            any agreement. ............................................................................................ 10

      B.    Plaintiff fails to plead that Hahn agreed to the use of threats,
            force, or intimidation against Plaintiff or that she agreed to
            injure him. ................................................................................................... 15

      C.    The First Amendment forecloses Plaintiff's reliance on talking
            points disseminated to the press to establish that Hahn violated
            § 1985. ......................................................................................................... 17

      D.    The circumstances giving rise to Plaintiff's complaint cannot
            support a claim under § 1985 ...................................................................... 22

            1.    Plaintiff cannot state a claim under § 1985(2) because he
                  has not been a witness in a court of the United States ...................... 22

            2.    Plaintiff cannot state a claim under § 1985(1) based on a
                  conspiracy with the President to prevent him from
                  holding a military or White House national security job ........... 23

II.   The Complaint Does Not Establish That Hahn Violated Clearly
      Established Law ....................................................................................................... 26

III.  Plaintiff's Claims Against Hahn Should Be Dismissed With
      Prejudice ................................................................................................................. 33

CONCLUSION ................................................................................................................. 35

# TABLE OF AUTHORITIES[*]

**Cases**

*Acosta Orellana v. CropLife Int'l,*
711 F. Supp. 2d 81 (D.D.C. 2010) .......................................................................... 14

*Anderson v. Creighton,*
483 U.S. 635 (1987) ................................................................................................ 26

*Ariz. Democratic Party v. Ariz. Republican Party,*
No. CV-16-03752-PHX-JJT,
2016 WL 8669978 (D. Ariz. Nov. 4, 2016) ...................................................... 16, 30

*Ashcroft v. al-Kidd,*
562 U.S. 731 (2011) ............................................................................ 2, 26, 27, 31

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ............................................................................................ 8, 13

*Barr v. Clinton,*
370 F.3d 1196 (D.C. Cir. 2004) ........................................................ 1, 17, 18, 21, 31

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................ 11, 13, 15, 29

*Berisha v. Lawson,*
141 S. Ct. 2424 (2021) ........................................................................................... 31

*Brown v. Sim,*
No. Civ.A. 03-2655,
2005 WL 3276190 (D.D.C. Sept. 30, 2005) ............................................................ 12

*Bush v. Butler,*
521 F. Supp. 2d 63 (D.D.C. 2007) ........................................................................ 12

*Carter v. Church,*
791 F. Supp. 298 (M.D. Ga. 1992) ........................................................................ 23

*Carty v. Author Sols., Inc.,*
789 F. Supp. 2d 131 (D.D.C. 2011) ...................................................................... 35

*Citizens United v. FEC,*
558 U.S. 310 (2010) ............................................................................................... 31

---

[*]Authorities upon which we chiefly rely are marked with asterisks.

*Cole v. Gray,*
    638 F.2d 804 (5th Cir. 1981) ............................................................... 12

*Deubert v. Gulf Fed. Sav. Bank,*
    820 F.2d 754 (5th Cir. 1987) ............................................................... 23

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) ................................................................. 1, 2, 9, 26

*Elkins v. District of Columbia,*
    690 F.3d 554 (D.C. Cir. 2012) ............................................................ 33

*Fairbanks v. Roller,*
    314 F. Supp. 3d 85 (D.D.C. 2018) ...................................................... 21

*FEC v. Wisc. Right to Life, Inc.,*
    551 U.S. 449 (2007) ............................................................................. 31

*Feres v. United States,*
    340 U.S. 135 (1950) ............................................................................. 24

*Firestone v. Firestone,*
    76 F.3d 1205 (D.C. Cir. 1996) ............................................................ 33

*Ford v. Donavan,*
    891 F. Supp. 2d 60 (D.D.C. 2012) ...................................................... 33

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
    561 U.S. 477 (2010) ............................................................................. 33

*Gertz v. Robert Welch, Inc.,*
    418 U.S. 323 (1974) ............................................................................. 21

*Gill v. United States,*
    415 F. Supp. 3d 127 (D.D.C. 2019) ................................................ 2, 27

*Graves v. United States,*
    961 F. Supp. 314 (D.D.C. 1997) ......................... 10, 12, 14, 15, 23, 29

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ........................................................................... 1, 8

*Hustler Mag. v. Falwell,*
    485 U.S. 46 (1988) .......................................................................... 18, 20

*Jarrell v. U.S. Postal Serv.,*
    753 F.2d 1088 (D.C. Cir. 1985) .......................................................... 34

iii

*Kinney v. Weaver*,
  367 F.3d 337 (5th Cir. 2004) ............................................................ 16, 17

*Lawrence v. Acree*,
  665 F.2d 1319 (D.C. Cir. 1981) ............................................................ 9, 24

*Mattiaccio v. DHA Grp., Inc.*,
  20 F. Supp. 3d 220 (D.D.C. 2014) ........................................................ 14

*McCreary v. Heath*,
  No. Civ.A. 04-623,
  2005 WL 3276257 (D.D.C. Sept. 26, 2005) ........................................... 14

*Messerschmidt v. Millender*,
  565 U.S. 535 (2012) .............................................................................. 33

*Michelin v. Jenkins*,
  704 F. Supp. 1 (D.D.C. 1989) ............................................................... 12

*Milkovich v. Lorain J. Co.*,
  497 U.S. 1 (1990) .................................................................................. 20

*Mitchell v. Forsyth*,
  472 U.S. 511 (1985) ............................................................................ 8, 33

*Mollnow v. Carlton*,
  716 F.2d 627 (9th Cir. 1983) ............................................................ 23, 24

*Montoya v. FedEx Ground Package Sys., Inc.*,
  614 F.3d 145 (5th Cir. 2010) ................................................................ 17

*Morast v. Lance*,
  807 F.2d 926 (11th Cir. 1987) .............................................................. 22

*Moxley v. Town of Walkersville*,
  601 F. Supp. 2d 648 (D. Md. 2009) .................................................. 30, 31

*N.Y. Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................ 17, 31

*Nunes v. WP Co.*,
  513 F. Supp. 3d 1 (D.D.C. 2020) .......................................................... 20

*Ollman v. Evans*,
  750 F.2d 970 (D.C. Cir. 1984) .............................................................. 21

*Pace v. Baker-White*,
  850 F. App'x 827 (3d Cir. 2021) ........................................................... 20

*Pearson v. Callahan,*
  555 U.S. 223 (2009) ........................................................................................ 2, 28

*Plumhoff v. Rickard,*
  572 U.S. 765 (2014) ............................................................................................. 27

*Pope v. Bond,*
  641 F. Supp. 489 (D.D.C. 1986) ...................................................................... 24, 25

*Reichle v. Howards,*
  566 U.S. 658 (2012) ...................................................................................... 1, 9, 33

*Rodriguez v. Editor in Chief,*
  285 F. App'x 756 (D.C. Cir. 2008) ........................................................................ 14

*RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP,*
  682 F.3d 1043 (D.C. Cir. 2012) ...................................................................... 11, 13

*Santistevan v. Loveridge,*
  732 F.2d 116 (10th Cir. 1984) ............................................................................. 25

*Sculimbrene v. Reno,*
  158 F. Supp. 2d 8 (D.D.C. 2001) .............................................................. 13, 15, 30

*Scyzgelski v. U.S. Customs & Border Patrol Agency,*
  48 F. Supp. 3d 80 (D.D.C. 2014) ........................................................................... 8

*Simpkins v. District of Columbia,*
  108 F.3d 366 (D.C. Cir. 1997) ............................................................................. 34

*Spagnola v. Mathis,*
  809 F.2d 16 (D.C. Cir. 1986) .......................................................................... 24, 25

*Spagnola v. Mathis,*
  859 F.2d 223 (D.C. Cir. 1988) ............................................................................. 24

*Tabb v. District of Columbia,*
  477 F. Supp. 2d 185 (D.D.C. 2007) ................................................................ 13, 28

*Texas v. Johnson,*
  491 U.S. 397 (1989) ............................................................................................. 17

*Thompson v. Trump,*
  Nos. 21-cv-400, -586, -858,
  2022 WL 503384 (D.D.C. Feb. 18, 2022) ......................................... 10, 14, 15, 21

*Turpin v. Ray,*
  319 F. Supp. 3d 191 (D.D.C. 2018) ...................................................................... 27

*United States v. Arthrex, Inc.,*
  141 S. Ct. 1970 (2021) ........................................................................ 26, 33

*United States v. Guest,*
  383 U.S. 745 (1966) .................................................................................. 17

*United States v. Muniz,*
  374 U.S. 150 (1963) ................................................................................. 23

*Virginia v. Black,*
  538 U.S. 343 (2003) ................................................................................. 17

*Weyrich v. New Republic, Inc.,*
  235 F.3d 617 (D.C. Cir. 2001) ................................................................ 20

*Woodrum v. Woodward County,*
  866 F.2d 1121 (9th Cir. 1989) ................................................................ 11

*\*Ziglar v. Abbasi,*
  137 S. Ct. 1843 (2017) ............................................... 13, 26, 27, 28, 29

## Constitutional Provisions

U.S. Const. art. II, § 1 ................................................................................. 26

U.S. Const. art. II, § 2 ..................................................................... 21, 23, 26

## Statutes, Regulations, & Rules

18 U.S.C. § 241 .............................................................................................. 17

42 U.S.C. § 1985 ....................................................................... 1, 7, 8, 9, 10, 22

28 C.F.R. § 50.15 ............................................................................................. 8

28 C.F.R. § 50.16 ............................................................................................. 8

Fed. R. Civ. P. 15(a)(2) .................................................................................. 33

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ..................................................... 16

vi

## INTRODUCTION

Julia Hahn worked in the White House and, as part of her job, circulated White House talking points to the press at the direction of her superiors. Compl. ¶¶ 24, 72, 146. In circulating these talking points, according to Plaintiff, Hahn conspired to use force, intimidation, or threat to prevent him from holding federal office, discharging his duties, and testifying in federal court, and conspired to injure him on account of discharging the duties of his office and so testifying. *See* 42 U.S.C. § 1985.

Qualified immunity makes quick work of these claims. As the Supreme Court has held, qualified immunity covers White House aides. *See Harlow v. Fitzgerald*, 457 U.S. 800, 802, 813 (1982). To overcome qualified immunity, the complaint must show both that Hahn "violated a federal statutory or constitutional right" and that "the unlawfulness of [her] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The complaint here shows neither.

As a matter of law, Plaintiff's complaint fails for numerous reasons to allege a violation of § 1985. *First*, Plaintiff fails to allege facts establishing that Hahn entered into *any* agreement with the purported conspirators, as necessary to plead a claim of conspiracy. *Second*, Plaintiff does not allege facts showing that Hahn agreed to the use of threats, force, intimidation, or injury, as required by § 1985. *Third*, the First Amendment bars Plaintiff's effort to paint Hahn's dissemination of talking points to the press as part of an unlawful "conspiracy." *See Barr v. Clinton*, 370 F.3d 1196, 1203 (D.C. Cir. 2004). And *fourth*, Plaintiff does not allege any factual circumstances that could give rise to a claim under either subsection of § 1985: § 1985(2) cannot

apply here because Plaintiff never alleges to have been a witness in a "court of the United States." And § 1985(1) has no application when a military officer alleges a conspiracy with his Commander-in-Chief to interfere with his job.

For these reasons, the Court should dismiss the claims against Hahn at the first step of the qualified immunity inquiry. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). But even if the Court disagreed at every turn on the merits, dismissal would still be required at the second step of the inquiry because Hahn did not violate clearly established law. For purposes of qualified immunity, "'[c]learly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear that every reasonable official would understand that what [s]he is doing' is unlawful." *Wesby*, 138 S. Ct. at 589 (quoting *Ashcroft v. al-Kidd*, 562 U.S. 731, 741 (2011)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Gill v. United States*, 415 F. Supp. 3d 127, 140 (D.D.C. 2019) (Boasberg, J.) (quoting *al-Kidd*, 563 U.S. at 741). Here, it was—and is—not "beyond debate" that circulating talking points at the direction of White House superiors would violate § 1985.

## FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit arises from the first impeachment of former President Trump. During the Trump presidency, Plaintiff was an Army officer who served in the White House as a Director of the National Security Council. Compl. ¶ 20. As part of his job, on July 25, 2019, Plaintiff listened to a phone call between President Trump and the president of Ukraine. Compl. ¶ 3. According to Plaintiff, President Trump sought to condition American military aid on an announcement of a Ukrainian investigation into the Bidens. Compl. ¶ 62. Plaintiff was concerned that President Trump's

2

attempt to pressure the Ukrainian president was improper, and he reported his concerns to the NSC's Legal Counsel.  Compl. ¶ 63.

Approximately two weeks later, an unidentified whistleblower filed a complaint with the chairmen of the Senate and House intelligence committees expressing an "urgent concern" about the July 25 telephone call.  Compl. ¶ 65.  This triggered a chain of events culminating in Speaker of the House Nancy Pelosi announcing the opening of an impeachment inquiry into President Trump's actions involving Ukraine.  Compl. ¶ 65.  As part of the investigation into the whistleblower's allegations, three House Committees required Plaintiff to testify.  Compl. ¶¶ 104, 129.   In addition to testifying privately, Plaintiff testified publicly before the Permanent Select Committee on Intelligence.  Compl. ¶ 154.

On December 18, 2019, the House of Representatives passed articles of impeachment against President Trump.  Compl. ¶ 181.  On January 31, 2020, the Senate voted against hearing witness testimony in the impeachment trial.  Compl. ¶ 189.  And on February 5, 2020, the Senate voted to acquit President Trump.  Compl. ¶ 189.

Plaintiff was both praised and criticized for his testimony before Congress. According to Plaintiff's complaint, the criticism he received stemmed from four main sources: (1) Fox News, (2) private citizens who favored President Trump; (3) members of Congress; and (4) President Trump and the White House.

Plaintiff alleges that two Fox News hosts used their broadcasts to cast doubt on his testimony: Laura Ingraham and Tucker Carlson.  Before Plaintiff testified,

Ingraham invited guests on her show to discuss the matter and one of the guests raised concerns about "espionage," both later clarifying that they did not intend to accuse Plaintiff himself of espionage.  Compl. ¶¶ 107–110, 113.  And after Plaintiff testified publicly about being offered the position of Ukrainian Defense Minister, Ingraham tweeted this information out to her followers and Carlson discussed the job offer on his show.  *See* Compl. ¶¶ 170, 173, 174.  (Although it appears that Plaintiff considers both Ingraham and Carlson to be "conspirators," he does not name either as defendants in this lawsuit.)

Other of the named defendants (not Hahn) opined on Plaintiff and his testimony.  Defendant Rudy Giuliani tweeted that "A US gov. employee" has "reportedly been advising two gov's?  No wonder he is confused and feels pressure."  Compl. ¶ 124.  Giuliani later tweeted that Representative Adam Schiff's expression of gratitude to Plaintiff for his courage to come forward amounted to "Schiff . . . thanking him for his secret testimony and for giving advice to two countries."  Compl. ¶ 125.  Defendant Donald Trump, Jr. appeared on *Fox & Friends* to say that Plaintiff had been "you know, talking to the [sic] Ukraine."  Compl. ¶ 127.  Trump, Jr. also complained that "You only get total absolution if you are a leftist veteran, not a veteran, just a leftist.  If you're on their side you can do no wrong."  Compl. ¶ 128.  And, according to the complaint, Trump, Jr. amplified a false story in which a military veteran claimed to have overheard Plaintiff bash America in front of Russian troops and to have been reprimanded.  Compl. ¶¶ 132, 137, 139.  Trump, Jr. later tweeted that a news story made it "[s]ound[] like" Plaintiff committed "perjury."  *See* Compl.

¶ 176. And after Plaintiff was let go from his NSC position, Trump, Jr. tweeted that Plaintiff was now free "to take the defense minister position in the [sic] Ukraine," and that Representative Schiff had done a service by "unearthing who all needed to be fired." Compl. ¶¶ 196, 197.

Members of Congress and Republican counsel also raised questions about Plaintiff's credibility. During Plaintiff's public testimony to the Permanent Select Committee on Intelligence, Republican counsel Stephen Castor pressed Plaintiff about a job offer he had received during an official trip to Ukraine—specifically, an offer to serve as the Ukrainian Minister of Defense. Compl. ¶ 159. According to Plaintiff, counsel asked about this job offer to question Plaintiff's loyalty to the United States. Compl. ¶ 163. Moreover, Plaintiff identifies comments by Representative Devin Nunes and Senator Marsha Blackburn that continued to question Plaintiff's credibility or spread false reporting about Plaintiff purportedly ridiculing the United States in front of Russian soldiers. *See* Compl. ¶¶ 183–187.

The subject of the impeachment inquiry, President Trump, added his voice to the mix. He called Plaintiff a "Never Trumper." Compl. ¶ 129. And he suggested that Plaintiff had not been on the disputed call with the Ukrainian President or had not reported it correctly. Compl. ¶ 129. After Plaintiff testified publicly about the Ukrainian Defense Minister offer, an Assistant to the President, Defendant Dan Scavino, tweeted from his official White House account: "#ICYMI: Lt. Col. Vindman was offered the position of Defense Minister for the Ukrainian Government THREE times! #ImpeachmentSHAM." Compl. ¶ 171. President Trump retweeted the

5

message. Compl. ¶ 172. After the Senate acquitted him, President Trump expressed that he was "not happy with" Plaintiff. Compl. ¶ 192. And President Trump later tweeted that Plaintiff "was very insubordinate, reported contents of my 'perfect' call incorrectly, &... was given a horrendous report by his superior. . . . In other words, 'OUT.'" Compl. ¶ 199. President Trump said that it was "up to the military" to determine whatever happened next. Compl. ¶ 201. Plaintiff alleges that President Trump formed part of the conspiracy but does not name him as defendant. *See* Compl. ¶ 94 ("President Trump and his conspirators . . . ").

Plaintiff alleges that President Trump, in addition to making these comments, held a meeting with advisors and political strategists to strategize about how to respond to the impeachment proceedings. Compl. ¶¶ 142, 143. The November 18, 2019 meeting included President Trump, Kellyanne Conway, Vice President Pence, Mark J. Penn, and Andrew Stein and notably did not include Hahn.

The day after this strategy meeting, while Plaintiff's testimony was already underway, Hahn played her only purported role in the alleged conspiracy. As "part of her job" as a communications aide, Compl. ¶ 72, Hahn distributed talking points to the media "at the direction of her superiors at the White House." Compl. ¶ 146. One email from Hahn distributing the talking points had the subject line "Vindman Has Major Credibility Issues" and stated that "Vindman has faced accusations of poor judgment, leaking, and going around normal procedures." Compl. ¶ 148. Another email from Hahn said, "There was nothing wrong with the call with Zelensky at all, Vindman was just upset that President Trump was leading foreign policy instead of

6

sticking to Vindman's talking points . . . But it's not Vindman's job to set foreign policy, it's the President's." Compl. ¶ 149. At around the same time, the Trump War Room Twitter account posted a tweet with some overlapping themes. Compl. ¶ 150.

These two emails are the only relevant actions Plaintiff alleges by Hahn in his 70+ page complaint.

The impeachment inquiry and associated criticism created difficulties for Plaintiff. On February 7, 2020, Plaintiff and his twin brother were publicly escorted out of the White House, ending their National Security Council assignments. Compl. ¶ 194. Plaintiff also alleges that his promotion in the military was unnecessarily delayed due to political pressure. Compl. ¶ 212. In July 2020, Plaintiff announced his retirement. Compl. ¶ 222. Even after the impeachment concluded, Plaintiff alleges that he continued to suffer harm as a result of the criticism he faced. *See* Compl. ¶¶ 229–235.

Two years after the Senate acquitted President Trump, Plaintiff filed this action. Plaintiff opted to sue Trump, Jr., Giuliani, Scavino, and Hahn, pleading two claims under 42 U.S.C. § 1985. *First*, Plaintiff alleges that the defendants conspired with each other and others (both named and unnamed) to prevent Plaintiff from holding and discharging the duties of his office by acts of force, intimidation, or threat and to injure Plaintiff in his person or property on account of his lawful discharge of his duties of office. Compl. ¶ 249; *see* 42 U.S.C. § 1985(1). *Second*, Plaintiff alleges that the defendants conspired with each other and others with the purpose of deterring Plaintiff by force, intimidation, or threat from attending and testifying

before Congress and potentially in a related judicial proceeding and to injure Plaintiff in his person or property on account of his having so testified.  Compl. ¶ 260; *see* 42 U.S.C. § 1985(2) (protecting witnesses "in any court of the United States").[1]

## LEGAL STANDARD

Ordinarily, to survive a motion to dismiss, "[a] plaintiff must put forth 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Scyzgelski v. U.S. Customs & Border Patrol Agency*, 48 F. Supp. 3d 80, 84 (D.D.C. 2014) (Boasberg, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action" and "mere conclusory statements" are insufficient.  *Iqbal*, 556 U.S. at 678.  Where, as here, a defendant is protected by qualified immunity, the standard is higher: A claim must be dismissed "[u]nless the plaintiff's allegations state a claim of violation of clearly established law."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

## ARGUMENT

Qualified immunity bars Plaintiff's claims against Hahn.  As the Supreme Court held in *Harlow v. Fitzgerald*, qualified immunity is available to aides of the President in a civil damages suit based on a conspiracy claim.  457 U.S. 800, 802, 813

---

[1] Because Hahn was sued for doing her job as a White House employee, she sought representation from the Department of Justice.  Finding that representation of Hahn would "be in the interest of the United States," DOJ authorized Hahn to retain counsel at the Government's expense.  28 C.F.R. § 50.15(a) (authorizing representation "when the actions for which representation is requested reasonably appear to have been performed within the scope of the employee's employment and the Attorney General or his designee determines that providing representation would otherwise be in the interest of the United States"); *id.* § 50.16 (authorizing representation by private counsel at DOJ expense).

(1982); *cf. Lawrence v. Acree*, 665 F.2d 1319, 1326 (D.C. Cir. 1981) (per curiam) (applying qualified immunity to a 42 U.S.C. § 1985 claim). The complaint acknowledges that Hahn "serv[ed] within the White House as a communications aide." Compl. ¶ 72; *see also* Compl. ¶ 24 ("Hahn served at all relevant times as a Special Assistant to the President and Deputy White House Communications Director, working at the White House.").

Qualified immunity requires dismissal unless the complaint shows that Hahn "violated a federal statutory or constitutional right" and that "the unlawfulness of [her] conduct was 'clearly established at the time.'" *Wesby*, 138 S. Ct. at 589 (quoting *Reichle*, 566 U.S. at 664). The complaint here fails to state a claim against Hahn altogether. And it certainly fails to establish that Hahn violated any clearly established law. The claims against her should thus be dismissed.

## I.    Plaintiff's Complaint Does Not State a Claim Against Hahn Under 42 U.S.C. § 1985.

The claims against Hahn should be dismissed because the complaint fails to state a claim for relief under § 1985(1) or (2). To state a claim under § 1985(1), Plaintiff had to plead facts showing that Hahn and at least one other person "conspire[d] to prevent, by force, intimidation, or threat, [Plaintiff] from accepting or holding any office, trust, or place of confidence under the United States or from discharging any duties thereof" or that Hahn and at least one other person conspired "to injure him in his person or property on account of his lawful discharge of the duties of his office." 42 U.S.C. § 1985(1). To state a claim under § 1985(2), Plaintiff had to plead facts showing that Hahn and at least one other person "conspire[d] to deter, by

9

force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified." 42 U.S.C. § 1985(2).

These claims fail for at least four reasons. *First*, there are no well-pleaded facts showing that Hahn agreed with anyone about anything, let alone that she agreed to an unlawful conspiracy. *Second*, even if Plaintiff had alleged facts showing that Hahn agreed to a White House communications strategy regarding Plaintiff, that would not show that Hahn agreed to the use of threats, force, or intimidation against Plaintiff or that she agreed to injure him, as § 1985 requires. *Third*, Hahn's speech for which Plaintiff has sued her is protected by the First Amendment. And *fourth*, Plaintiff failed to allege circumstances that could give rise to a claim within the scope of § 1985(1) or (2) given the military context here and the fact that Plaintiff was never a witness "in any court of the United States."

## A.    Plaintiff fails to allege facts establishing that Hahn entered into any agreement.

Because § 1985 is a conspiracy statute, Plaintiff had to plead a "plausible conspiracy" to state a claim. *Thompson v. Trump*, Nos. 21-cv-400, -586, -858, 2022 WL 503384, at *29 (D.D.C. Feb. 18, 2022). The existence of an agreement is the "essential element of a conspiracy claim." *Graves v. United States*, 961 F. Supp. 314, 320 (D.D.C. 1997). An agreement is a meeting of the minds: "a single plan, the essential nature and general scope of which were known to each person who is to be held responsible for its consequences." *Thompson*, 2022 WL 503384, at *30 (quotation

10

marks omitted).  Importantly, "an allegation of parallel conduct and a bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A conspiracy claim must allege "enough factual matter (taken as true) to suggest that an agreement was made." *Id.*

Plaintiff's allegations of "agreement" are conclusory legal assertions that cannot defeat a motion to dismiss.  The complaint contains repeated bare allegations that "Defendants agreed" to an unlawful conspiracy without ever pleading facts showing who agreed to what, with whom, or how.  *See, e.g.*, Compl. ¶ 6 ("The conspirators agreed on common, unlawful objectives . . ."); Compl. ¶ 18 ("Defendants and others . . . agreed to intimidate [Plaintiff] to prevent him from testifying to Congress and to retaliate against him . . ."); Compl. ¶ 249 ("Defendants knowingly and intentionally agreed on and conspired with each other and others with a shared purpose . . ."); Compl. ¶ 260 ("Defendants agreed on and conspired with each other and others . . .").  These are exactly the sort of bare allegations that the Supreme Court found insufficient to state a claim for conspiracy in *Twombly*.  *See* 550 U.S. at 565 (noting that the complaint alleged that the defendants "have agreed not to compete with one another" (quotation marks omitted)).  And courts around the country have followed *Twombly* and held that conclusory allegations of agreement are inadequate.  *RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1052 (D.C. Cir. 2012) (dismissing civil conspiracy claim because the allegations of conspiracy were conclusory and unsupported); *see also Woodrum v. Woodward County*, 866 F.2d 1121, 1126–27 (9th Cir. 1989); *Cole v. Gray*, 638 F.2d

11

804, 811 (5th Cir. 1981); *Graves,* 961 F. Supp. at 321 (A "speculative and conclusory statement does not constitute an allegation of a meeting of the minds sufficient to state a § 1985 claim.").

Plaintiff never alleges "the existence of any events, conversations, or documents indicating there was an agreement" between Hahn and others to violate Plaintiff's rights. *Bush v. Butler*, 521 F. Supp. 2d 63, 68 (D.D.C. 2007). The only "meeting" Plaintiff identifies is the November 18 strategy meeting involving President Trump, Vice President Pence, Conway, Penn, and Stein. Compl. ¶ 142–143. But Plaintiff does not allege that Hahn participated in that meeting at all.

To the extent Plaintiff seeks to make a conspiracy out of Hahn's job, the intracorporate conspiracy doctrine poses an insurmountable obstacle. Under that doctrine, there can be no conspiracy liability when a claim is based upon the interactions of two or more agents of the same entity, whether that entity is a corporation or a government entity. *See, e.g.*, *Brown v. Sim,* No. Civ.A. 03-2655, 2005 WL 3276190, at *3 (D.D.C. Sept. 30, 2005) (applying intracorporate conspiracy doctrine to dismiss a § 1985 claim against private corporation and its employee); *Michelin v. Jenkins*, 704 F. Supp. 1, 4 (D.D.C. 1989) (same, against governmental entity and its officers). Plaintiff alleges that Hahn circulated talking points "at the direction of her superiors at the White House." Compl. ¶ 146. But an "agreement" to do your job as directed by your supervisor within the Executive Branch cannot establish a conspiracy under § 1985. "Federal district courts in the District of Columbia . . . consistently have applied the intracorporate conspiracy doctrine to

12

Section 1985." *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 190 (D.D.C. 2007). As the Supreme Court explained, "open discussion among federal officers is to be encouraged." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1868 (2017) (applying qualified immunity to bar § 1985 suit).

Plaintiff's allegations similarly fail to show any agreement between Hahn and members of the press. Plaintiff's allegations show only that Hahn sent emails expressing the White House's views to members of the media. Members of the media were free to adopt, modify, or reject those talking points, so circulating them does not show any "agreement" between Hahn and anyone. *See Sculimbrene v. Reno*, 158 F. Supp. 2d 8, 16 (D.D.C. 2001) (a complaint that merely described "circumstances which involve communication between the individual defendants and allege[d] that the result of these communications was to discredit and defame Plaintiff" was insufficient to allege an agreement). Similarly, any attempt to construct a conspiracy out of the fact that a Twitter account repeated White House talking points would run afoul of the Supreme Court's holding that parallel conduct is insufficient to establish a conspiracy. *Twombly*, 550 U.S. at 556 ("an allegation of parallel conduct and a bare assertion of conspiracy will not suffice"). A complaint "d[oes] not plausibly suggest an illicit accord" where conduct "[i]s not only compatible with, but indeed [i]s more likely explained by, lawful, unchoreographed . . . behavior[.]" *RSM Prod. Corp.*, 682 F.3d at 1052 (quoting *Iqbal*, 556 U.S. at 680). It is not surprising that a Twitter account belonging to President Trump's reelection campaign would rely on White House talking points in developing its messaging.

13

In sum, without a meeting of the minds, the acts of two or more persons do not amount to a conspiracy. *Rodriguez v. Editor in Chief*, 285 F. App'x 756, 759 (D.C. Cir. 2008) (per curiam); s*ee also Graves*, 961 F. Supp. at 321 (dismissing claim where plaintiff alleged that his former employer "'colluded'" with the Department of Education to keep him underemployed, without pleading "any facts showing the existence or establishment of an agreement"); *Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 113 (D.D.C. 2010) (dismissal of conspiracy claim warranted because plaintiff alleged only that defendants "acted in concert" and did not, for example, "provide any indication of when or how such an agreement was brokered, or how [certain] Defendants specifically, as opposed to all the named defendants generally, were parties to an agreement" (quotation marks omitted)); *McCreary v. Heath*, No. Civ.A. 04-623, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim when plaintiff's complaint failed "to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants"); *Mattiaccio v. DHA Grp., Inc.*, 20 F. Supp. 3d 220, 231 (D.D.C. 2014) ("As Plaintiff has failed to clearly allege that Defendant Fischer entered an agreement to defame Plaintiff with any of the Defendants . . . , the Court GRANTS Defendant's Motion to Dismiss Count Five, Plaintiff's civil conspiracy claim."); *Thompson*, 2022 WL 503384, at *37 (dismissing § 1985(1) claims against Giuliani and Trump, Jr. for making incendiary tweets and statements on January 6 because these were protected speech and there was no evidence they "shared the common conspiratorial goal of violently disrupting the

14

Certification [of the 2020 election]" as the other defendants did). This Court should dismiss Plaintiff's claims against Hahn for failure to plead the most basic element of a conspiracy claim—that she agreed with anyone to do anything.

**B.      Plaintiff fails to plead that Hahn agreed to the use of threats, force, or intimidation against Plaintiff or that she agreed to injure him.**

For the reasons just explained, the complaint fails to allege that Hahn entered into *any* agreement. Section 1985, moreover, requires a very specific type of agreement, and even if the Court finds or assumes that the complaint alleges an agreement, the complaint does not allege facts showing the kind of agreement that could violate § 1985: an agreement to use threats, force, or intimidation against Plaintiff or to injure him. "Before assessing the sufficiency of Plaintiff['s] pleadings, it is important to bear in mind what the alleged unlawful conspiracy is and what it is not." *Thompson*, 2022 WL 503384, at *30. Plaintiff's obligation was to plead "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of *illegal* agreement." *Twombly*, 550 U.S. at 556 (emphasis added); *see also Graves*, 961 F. Supp. at 321 ("[A] plaintiff is required to allege a connection between the overt acts, the furtherance of the conspiracy and the plaintiff's injury."); *Sculimbrene*, 158 F. Supp. 2d at 16.

Again, Plaintiff relies on conclusory recitations of law. *See, e.g.,* Compl. ¶ 249 ("Defendants knowingly and intentionally agreed on and conspired with each other and others with a shared purpose of preventing, by force, intimidation, or threat, Lt. Col. Vindman from holding and discharging the duties of office."). Repeating the

15

language of the statute, without alleging well-pleaded facts, is not enough to establish an agreement, let alone an illegal one. *See* pp. 11–12, *supra*.

The only "overt act" arguably attributable to Hahn is that she circulated talking points allegedly "aimed at coordinating and advancing a false narrative." Compl. ¶ 252. But this does not rise to the level of threat, force, intimidation, or injury within the meaning of § 1985. *See* Black's Law Dictionary (11th ed. 2019) (defining "threat" as "[a] communicated intent to inflict harm or loss on another or on another's property"); *id.* (defining "force" as "[p]ower, violence, or pressure directed against a person or thing"); *id.* (defining "intimidation" as "[u]nlawful coercion" or "extortion"). Merely circulating talking points does not establish an agreement to an illegal conspiracy to harm or intimidate another. *See Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752-PHX-JJT, 2016 WL 8669978, at *8 (D. Ariz. Nov. 4, 2016) (no unlawful conspiracy to intimidate under § 1985 for circulating talking points about "unlawful voting by illegal immigrants" and "voting irregularities" (quotation marks omitted)).

A § 1985 conspiracy exists only when an agreement is formed for a specific illegal purpose. *Kinney v. Weaver*, 367 F.3d 337, 355 (5th Cir. 2004). In the § 1985(1) context, the conspirator must act "to prevent . . . any person from accepting or holding" office or "to injure him . . . on account of his lawful discharge of the duties of his office." In the § 1985(2) context, the conspirator must act to "deter" a party or witness from "attending or testifying" in federal court or "injure" him "'on account of his having so attended or testified.'" *Montoya v. FedEx Ground Package Sys., Inc.*,

16

614 F.3d 145, 149–50 (5th Cir. 2010). Even if Hahn agreed to a communications strategy, Plaintiff fails to allege any facts that, taken as true, plausibly suggest she did so for any illicit purposes, instead of merely to provide commentary on a matter of public concern. *See also United States v. Guest*, 383 U.S. 745, 760 (1966) (interpreting the criminal counterpart to § 1985, 18 U.S.C. § 241, and noting that the statute would not reach every conspiracy that affected a federal right, but only a conspiracy whose "predominant purpose" was to deter or punish the exercise of the federal right); *Kinney*, 367 F.3d at 355 n.22 (citing *Guest* in its analysis of § 1985(2)).

## C. The First Amendment forecloses Plaintiff's reliance on talking points disseminated to the press to establish that Hahn violated § 1985.

The First Amendment enshrines "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open" even though such debate "may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable."). And "political speech" is "at the core of what the First Amendment is designed to protect." *Virginia v. Black*, 538 U.S. 343, 365 (2003).

As the D.C. Circuit has already determined, the First Amendment's protection applies to claims brought under § 1985 that "alleg[e] reputational or emotional harm from the publication of protected speech." *See Barr*, 370 F.3d at 1203. To have it

17

otherwise, the court explained, "would allow public officials to recast defamation claims barred by [*New York Times v. Sullivan*] as section 1985(1) conspiracies, thus choking off the 'breathing space' necessary to safeguard 'the freedoms protected by the First Amendment.'" *Id.* (quoting *Hustler Mag. v. Falwell*, 485 U.S. 46, 56 (1988)). To ensure that § 1985 does not chill protected speech, the D.C. Circuit thus held that a § 1985 claim like Plaintiff's can survive only if the allegedly harmful speech "was both false and published with actual malice, i.e., with knowing or reckless disregard for its falsity." *Id.* at 1202.

Plaintiff's allegations attribute two statements to the talking points Hahn circulated. The first said that "Vindman Has Major Credibility Issues" and advanced the theme that "Vindman has faced accusations of poor judgment, leaking, and going around normal procedures." Compl. ¶ 148. The second said: "There was nothing wrong with the call with Zelensky at all, Vindman was just upset that President Trump was leading foreign policy instead of sticking to Vindman's talking points. . . . But it's not Vindman's job to set foreign policy, it's the President's." Compl. ¶ 149. The complaint never suggests that Hahn knew that either of these statements was false, nor that she behaved recklessly by circulating the White House's talking points. Plaintiff thus failed to allege "actual malice."

This is no inadvertent omission. Plaintiff knew he needed to allege knowledge of falsity or recklessness and sought to do so for other defendants and other alleged prominent players. *See* Compl. ¶ 124 ("Giuliani either knew [of the falsity] and tweeted anyway, or he recklessly disregarded the truth."); Compl. ¶ 125 ("Giuliani

18

knew that Lt. Col. Vindman worked only for the United States and that the suggestion he worked for another country (or for both) was not only false and baseless, but also that his accusations struck directly at the heart of Lt. Col. Vindman's position at the NSC."); Compl. ¶ 132 ("Trump, Jr. amplified a false story—which he knew or should have known was false . . . ."); Compl. ¶ 134 ("Trump Jr. knew that it was not true or recklessly disregarded information showing its falsity."); Compl. ¶ 177 ("Trump Jr. thus knew or should have known that his accusations of 'perjury' were false"); Compl. ¶ 185 ("Ingraham knew or should have known from reviewing the source materials, no commander of Lt. Col. Vindman had ever said he was 'a political activist in uniform' or that he went 'outside his chain of command.'"); Compl. ¶ 200 (stating that President Trump's "tweet made several false statements, with knowledge that they were not true or in reckless disregard for the truth."); Compl. ¶ 203 ("Defendant Trump Jr. launched another series of attacks against Lt. Col. Vindman in May 2020, picking up and knowingly or recklessly repeating the false claim that Lt. Col. Vindman committed perjury . . . .").

Even Plaintiff's catch-all malice paragraph says "*as set forth in detail above*, Defendants and other conspirators published a number of their statements with actual malice, knowingly or recklessly disregarding that they were false . . . ." Compl. ¶ 255 (emphasis added); Compl. ¶ 265 (same). Because Plaintiff never alleged in any "detail above" that Hahn published anything with actual malice, that paragraph does not cover her, and, in any event, conclusory allegations of actual malice are not enough to defeat a motion to dismiss. *See Nunes v. WP Co.*, 513 F.

19

Supp. 3d 1, 7–8 (D.D.C. 2020) (complaint that relies on conclusory allegations to establish actual malice "does not satisfy Rule 8"). "At the pleading stage, a public figure . . . must allege *facts* to support an inference of actual malice." *Pace v. Baker-White*, 850 F. App'x 827, 831 (3d Cir. 2021) (citing cases from several circuits).

Although unnecessary to reach in light of the actual-malice deficiency, the claims separately fail because the statements attributed to Hahn are not verifiably false. "Verifiability" of an alleged defamatory statement is "a critical threshold question at the Rule 12(b)(6) stage." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624 (D.C. Cir. 2001) (holding that negative statements about a conservative leader's personality traits were not verifiable statements). Supreme Court precedent "provides protection for statements that cannot 'reasonably [be] interpreted as stating actual facts.'" *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Mag.*, 485 U.S. at 50)). "[A] statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive full constitutional protection." *Id.*

Neither of the two identified talking points statements meets this standard. To be sure, Plaintiff alleges that the underlying *accusations* of "leaking" and "going around normal procedures" were false. Compl. ¶ 148. But Plaintiff's own complaint alleges that he did, in fact, *face* those accusations. *See, e.g.*, Compl. ¶ 176 (Trump, Jr., retweeting an article entitled "Vindman Just Admitted to Leaking to the Anti-Trump Whistleblower"). And that is what the talking points said: "Vindman has faced accusations of poor judgment, leaking, and going around normal procedures."

20

Compl. ¶ 148.  Moreover, Plaintiff does not appear to allege that the second talking points were false at all.  This is likely because two of those statements—"There was nothing wrong with the call"; and "Vindman was just upset that President Trump was leading foreign policy instead of sticking to Vindman's talking points"—are not statements that can be objectively characterized as true or false.  *See Ollman v. Evans*, 750 F.2d 970, 979 (D.C. Cir. 1984) ("Insofar as a statement lacks a plausible method of verification, a reasonable reader will not believe that the statement has specific factual content."); *cf. Fairbanks v. Roller*, 314 F. Supp. 3d 85, 90 (D.D.C. 2018) ("Pure statements of opinion can never support liability because '[u]nder the First Amendment there is no such thing as a false idea.'") (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)).  And one of the statements—"[I]t's not Vindman's job to set foreign policy, it's the President's"—is objectively true.  U.S. Const. art. II, § 2. For this reason, as well, the First Amendment bars the claim.  *See Barr*, 370 F.3d at 1203 (affirming dismissal because the "complaint alleges neither that the information . . . is false nor that the report was published with actual malice").

For all these reasons, the First Amendment protects Hahn's alleged dissemination of talking points to the press and her alleged conduct does not violate § 1985.  *See Thompson*, 2022 WL 503384, at *46 (dismissing § 1985 claims against Giuliani and Trump, Jr. because their statements related to January 6th were protected expression).

21

**D.     The circumstances giving rise to Plaintiff's complaint cannot support a claim under § 1985.**

In addition to the defects explained above, Plaintiff's claims each contain a fundamental flaw that is impossible to remedy. Subsection (2) of § 1985 applies to witnesses in a "court of the United States," but Plaintiff never alleges to have been a witness in a federal court; Congress is not a "court of the United States." And Plaintiff's claim under subsection (1) of § 1985 requires accepting the notion that it can be an illegal conspiracy for the President and his staff to "agree" on how a subordinate military officer should perform his job duties. Such an extension of § 1985 to the relationship between the Commander-in-Chief and subordinate military personnel would be unprecedented and would raise serious constitutional concerns.

**1.     Plaintiff cannot state a claim under § 1985(2) because he has not been a witness in a court of the United States.**

Plaintiff's claim under § 1985(2) fails as a textual matter because he testified only before committees of the U.S. House of Representatives. By its plain text, § 1985(2) applies where the alleged victim is a witness in a "court of the United States." Plaintiff does not allege to have ever been a witness in a court of the United States.

Courts have hewn strictly to the text of § 1985(2) in determining that proceedings in tribunals other than federal courts are beyond its scope. *See Morast v. Lance*, 807 F.2d 926, 930 (11th Cir. 1987) ("Section 1985(2) applies only if the conspiracy attempted to prevent the witness from attending or testifying in federal court. Morast's testimony was before the OCC, an administrative agency, not a federal court." (citation omitted)); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758

22

(5th Cir. 1987) (holding that interference with or obstruction of administrative proceedings is not encompassed by § 1985(2)); *Graves*, 961 F. Supp. at 319 ("Graves has failed to state a claim under § 1985(2), because he was not a party, witness or juror to any matter pending in federal court. His pending administrative proceedings under Title VII do not constitute a court proceeding for the purposes of § 1985(2)."); *Carter v. Church*, 791 F. Supp. 298, 300 (M.D. Ga. 1992) (holding that § 1985(2) does not apply to EEOC proceedings). Because Plaintiff does not allege that he ever served as a witness in a federal court, his claim under subsection (2) fails as a matter of law.

### 2.    Plaintiff cannot state a claim under § 1985(1) based on a conspiracy with the President to prevent him from holding a military or White House national security job.

The President is the "Commander in Chief of the Army." U.S. Const. art. II, § 2, cl. 1. At all relevant times, Plaintiff "was an officer in the U.S. Army." Compl. ¶ 20. Plaintiff's theory under § 1985(1), however, is that President Trump conspired with others to prevent Plaintiff from discharging his job duties and from holding his job. *See, e.g.,* Compl. ¶¶ 75, 241, 242. Plaintiff's attempt to stretch § 1985(1) to allow a member of the military to claim a "conspiracy" between White House officials and the President—his Commander-in-Chief—to affect his job duties defies the plain meaning of the text and poses serious constitutional concerns.

Recognizing the "special relationship of the soldier to his superiors," the Ninth Circuit held that a military subordinate cannot state a claim under § 1985 based on a purported conspiracy effected by his superiors. *See Mollnow v. Carlton*, 716 F.2d 627, 631–32 (9th Cir. 1983) (quoting *United States v. Muniz*, 374 U.S. 150, 162 (1963)). There, a former Air Force officer alleged that fellow officers ignored his safety

23

concerns, removed him from flight duty, suppressed his reports and imprisoned him in a psychiatric ward to prevent him from testifying about a crash that occurred as he had predicted, and ultimately removed him from service. *Id.* at 628. Despite these serious allegations, the Ninth Circuit looked to the Supreme Court's decision in *Feres* to conclude that the "military could not function" if a subordinate could attack an order he felt was unjust through the civil system, allowing a civil jury to weigh in on a quintessentially military matter. *Id.* at 631–32 (citing *Feres v. United States*, 340 U.S. 135, 141 (1950)). This concern is heightened here, where a former military officer questions not merely the judgment of fellow officers, but that of the Commander-in-Chief.

Even outside the military context, courts have recognized that § 1985(1) "was not intended . . . to handle causes of action for misconduct by supervisors within a government agency." *Pope v. Bond*, 641 F. Supp. 489, 497 (D.D.C. 1986); *see also Spagnola v. Mathis*, 809 F.2d 16, 34 (D.C. Cir. 1986) (Silberman, J., concurring in part and dissenting in part) ("The nature of these provisions reveals an overarching congressional concern to protect the authority, institutions and processes of the Federal Government from *external*, usually coercive, disruption."), *on reh'g*, 859 F.2d 223 (D.C. Cir. 1988) (en banc) (per curiam). "It would be inconsistent with the carefully crafted Congressional scheme" handling federal employee employment disputes to "expose federal supervisors to personal liability for their decisions regarding subordinates which are based upon mere personal antipathy or incorrect work evaluations." *Lawrence*, 665 F.2d at 1328 (Wald, J., concurring); *Santistevan v.*

24

*Loveridge,* 732 F.2d 116, 118 (10th Cir. 1984) (legislative history of § 1985(1) "clearly indicates that the Act was not enacted to develop a forum within the federal courts whereby dissatisfied federal employees could resolve internal personnel problems").

Indeed, the statute collapses on itself when an executive employee and military member tries to sue White House employees who allegedly agreed with the President in a manner that affected the employee's job.  Section 1985(1) asks whether a defendant has conspired to prevent, or retaliated based on, a federal officer's performance of the "duties" of his office.  Therefore, it is "[i]ndispensable to the cause of action" to have "an available definition or determination of those duties." *Spagnola,* 809 F.2d at 33 (Silberman, J., concurring in part).  Normally, the federal officer's supervisors can provide "an authoritative description of the plaintiff's duties." *Id.*  However, "[t]o recognize a suit by a federal officer under section 1985(1) against his supervisors for interference with his official duties would create an anomaly under the statutory language: supervisors by their very direction of subordinates, both general and specific, define the scope of their subordinates' duties." *Id.*; *see also Pope,* 641 F. Supp. at 497 (explaining that § 1985(1) was "designed to protect federal officers against interference from persons *outside* the federal government").

In this case, the "statutory anomaly" would become a constitutional absurdity. Plaintiff was a military officer and an executive branch officer in the White House National Security Council.  Plaintiff cannot allege that Hahn violated federal law by purportedly agreeing with the President to prevent Plaintiff from doing his job duties

25

or holding his job because Plaintiff's job duties were ultimately defined and controlled by the President.    *See* U.S. Const. art. II, § 1 ("Vesting Clause"); *id.* § 2, cl. 1 ("Commander-in-Chief Clause"); *United States v. Arthrex, Inc.*, 141 S. Ct. 1970, 1978–79 (2021) ("The President is responsible for the actions of the Executive Branch and cannot delegate that ultimate responsibility or the active obligation to supervise that goes with it." (quotation marks and brackets omitted)).    Plaintiff's effort to extend § 1985(1) to the context of his military employment fails as a matter of law.

## II.    The Complaint Does Not Establish That Hahn Violated Clearly Established Law.

For the reasons set forth above, Plaintiff's complaint fails to state a claim against Hahn for violating § 1985.    The Court thus should dismiss Plaintiff's claims against Hahn at the first step of the qualified immunity inquiry.    In all events, however, Plaintiff's complaint fails to show that it was established that § 1985 would "clearly prohibit [Hahn's] conduct in the particular circumstances before [her]." *Wesby*, 138 S. Ct. at 590.

To overcome qualified immunity, Plaintiff would have to show that preexisting precedent made it clear to Hahn that "what [s]he [was] doing" was unlawful.    *Id.* at 589 (quoting *al-Kidd*, 563 U.S. at 741).    Whether Hahn's alleged conduct was objectively reasonable for qualified immunity purposes depends on "the legal rules that were clearly established at the time the action was taken." *Ziglar*, 137 S. Ct. at 1866 (brackets omitted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Ambiguity in the contours of § 1985 or its applicability to the facts and circumstances alleged requires dismissal, as qualified immunity protects government employees

26

from suit where they make objectively reasonable mistakes of law or fact. *Id.* "Indeed, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Gill*, 415 F. Supp. 3d at 140 (quoting *al-Kidd*, 563 U.S. at 741).

In making this determination, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quotation marks and citation omitted); *see also Turpin v. Ray*, 319 F. Supp. 3d 191, 197 (D.D.C. 2018) ("Given the unique factual circumstances of each case, a qualified immunity determination hinges largely on an official's conduct in the particular situation and protects against reasonable mistakes of law, fact, or mixed questions of law and fact."). If any critical "question is sufficiently open so that officials in th[e] suit could not be *certain* that § 1985[] was applicable to their discussions and actions," then that is enough to preclude the claim. *Ziglar*, 137 S. Ct. at 1868–69 (emphasis added).

Far from being grounded in established, on-point precedent, everything about Plaintiff's claims against Hahn is, at best, novel and unsettled. Can an "agreement" by a White House employee to do her job as directed by her supervisors constitute a "conspiracy" within the meaning of § 1985 notwithstanding the intracorporate conspiracy doctrine? Can disseminating talking points to the press rise to the level of "force," "threat," "intimidation," or "injury" under § 1985 notwithstanding the First Amendment, especially when those talking points do not even contain verifiable

assertions of fact?  Can § 1985(2) be applied where a person was a witness in a congressional proceeding and not in a federal court?  Can § 1985 be used to challenge the President's decisions about a subordinate military officer's performance of his job duties notwithstanding the President's Commander-in-Chief powers?

On the merits, the answer to all those questions is "no."  But at the very least, no preexisting precedent answered those questions "yes."  Dismissal is therefore required at step two of the qualified immunity inquiry even if the Court were to conclude or assume that Plaintiff's allegations against Hahn state valid claims for violations of § 1985.  *Pearson*, 555 U.S. at 242, 245.

*First*, consider the purported "agreement" at issue here.  Setting aside Plaintiff's reliance on conclusory allegations, it was not clearly established that Hahn *could* "conspire" with White House officials by merely following her superiors' direction to circulate talking points.  Such an approach would be a marked departure from the Court's usual application of the intracorporate conspiracy doctrine to § 1985 claims.  *Tabb*, 477 F. Supp. 2d at 190.

Indeed, the Supreme Court's decision in *Ziglar* all but resolves this case. There, the plaintiff alleged a § 1985 conspiracy against Executive Branch officers based on a policy set in motion immediately following September 11 to detain certain immigrants suspected of terrorism links.  *Ziglar*, 137 S. Ct. at 1852–54.  Applying qualified immunity, the Court held "that reasonable officials in petitioners' positions would not have known, and could not have predicted, that § 1985(3) prohibited their joint consultations and the resulting policies that caused the injuries alleged."  *Id.* at

1867. The Court noted that its own precedent "indicates that there is no unlawful conspiracy when officers within a single corporate entity consult among themselves." *Id.* And while the Court declined to settle a longstanding circuit split on whether the intracorporate conspiracy doctrine applies to § 1985 claims, it held that the very existence of that uncertainty meant that the defendants were immune: "the fact that the courts are divided . . . demonstrates that the law on the point is not well established." *Id.* at 1868. Here, Plaintiff faults Hahn for carrying out her job in coordination with others in the White House. *See* Compl. § 146. But just as in *Ziglar*, Hahn "would not have known with any certainty that" such agreements among Executive Branch employees "were forbidden by law." *Ziglar*, 137 S. Ct. at 1869. Plaintiff cannot state a claim simply by showing that "officials employed by the same government department" spoke "to one another and work[ed] together in their official capacities." *Id.* at 1868–69. To be sure, two of the named defendants were not government employees, but Plaintiff does not—and cannot—allege facts showing that Hahn ever entered into any agreement with *them*. Qualified immunity protects executive officials from § 1985 claims for merely agreeing with one another to carry out governmental functions.

*Second*, recall the lack of facts establishing anything *unlawful* about the alleged agreement. Plaintiff' needed to allege facts that would "reveal evidence of *illegal* agreement"—*i.e.*, an agreement to intimidate or injure Plaintiff to deter him from engaging in a protected activity. *Twombly*, 550 U.S. at 556 (emphasis added); *see also Graves*, 961 F. Supp. at 321 ("[A] plaintiff is required to allege a connection

29

between the overt acts, the furtherance of the conspiracy and the plaintiff's injury.");
*Sculimbrene*, 158 F. Supp. 2d at 16.  He did nothing of the sort.  Plaintiff rather relied on the circulation of talking points to hint at a purported agreement to intimidate or injure.  But undersigned counsel are unaware of any case that clearly established that circulating talking points can constitute intimidation or injury under § 1985.

In fact, the limited precedent that exists on this question suggests the opposite. In *Arizona Democratic Party*, for example, the Arizona Democratic Party sought injunctive relief, arguing that the Arizona Republican Party, Roger Stone and Stop the Steal conspired to prevent by force, intimidation, or threat citizens who were lawfully entitled to vote from doing so.  2016 WL 8669978 (D. Ariz. Nov. 4, 2016). Among other things, the plaintiff relied on talking points that campaign spokespersons were to emphasize, stating "We have []seen very significant recent voting irregularities" and "Non-citizen votes may have been responsible for Barack Obama's narrow margin of victory in North Carolina."  *Id.* at *8 (quotation marks omitted).  Based on these talking points (and other statements) the Arizona Democratic Party argued that the Trump Campaign had unlawfully intimidated voters.  *Id.*  The court concluded that, even if "repugnant to the listener," the talking points (and other statements) "without more, simply do not prove actual or likely intimidation."  *Id.* at *9.  In *Moxley v. Town of Walkersville*, 601 F. Supp. 2d 648 (D. Md. 2009), in contrast, the court found that the plaintiffs *had* stated a claim under § 1985(3) for conspiracy to deprive persons of equal protection of the laws.  But in reaching this determination, the court noted that the allegations not only reflected

shared talking points but also that state officials had "offered $500 to the Private Defendants to pursue the goal of 'beat[ing] the Muslims.'" *Id.* at 663.  No remotely similar allegation is present here.  Hahn simply did her job and circulated talking points to the media.  That did not violate clearly established law.

*Third*, take the First Amendment.  It "has long been settled" that "freedom of expression upon public questions is secured by the First Amendment." *N.Y. Times Co.*, 376 U.S. at 269.  The First Amendment limits the scope of § 1985. *See Barr*, 370 F.3d at 1203; *see also* pp. 18–22, *supra*.  No reasonable person in Hahn's position would believe that relaying White House talking points to the press lay outside the First Amendment's protection or would violate § 1985. *See Citizens United v. FEC*, 558 U.S. 310, 327 (2010) (First Amendment standards "give the benefit of any doubt to protecting rather than stifling speech" (quoting *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449, 469 (2007)).  As explained above, the talking points for which Plaintiff sued Hahn do not convey verifiable factual assertions, so imposing liability for them is a non-starter. *See* pp. 20–21, *supra*.  But even if the Court were to conclude that the talking points fell on the other side of the sometimes-blurry line separating assertions of fact from expressions of opinion, qualified immunity exists precisely to protect reasonable mistakes about where blurry legal lines will be drawn. *al-Kidd*, 563 U.S. at 743.  Perhaps Plaintiff disagrees with *Times v. Sullivan* and believes that actual malice should not be required. *See Berisha v. Lawson*, 141 S. Ct. 2424 (2021) (Thomas, J., and Gorsuch, J., dissenting from denial of certiorari).  But even if Plaintiff could muster an eventual win on the merits of that point before the Supreme

31

Court, that would not change the fact that under the law established at the time Hahn acted, the actual malice standard applied and the First Amendment protected Hahn's speech.

And *fourth*, even apart from all of these defects, it was not clearly established that § 1985 applied in the circumstances at issue here.  For purposes of § 1985(2), Plaintiff's claim depends on the proposition that a committee of Congress is a "court of the United States."  That is wrong, but at the very least there was (and is) no precedent clearly establishing this highly countertextual notion.  So Hahn would remain entitled to qualified immunity regardless of how courts might construe "court of the United States" in § 1985(2) in the future.  Similarly, no precedent established that a dispute about a military officer's job duties is cognizable under § 1985, least of all when the claim is premised on a "conspiracy" orchestrated by the officer's commander-in-chief.  So even if the Court were to extend § 1985 to this unique and sensitive context, it would remain true that the applicability of this statute was not clearly established in these circumstances.  Hahn cannot be held liable for failing to anticipate such a novel application of § 1985.

Beyond the novelty of Plaintiff's claims and the lack of any relevant caselaw clearly establishing a legal violation, the circumstances Plaintiff has alleged show that a reasonable person in Hahn's position would have believed that her actions were entirely legal.  The complaint alleges, for example, that Hahn circulated the talking points with the approval of her superiors.  Compl. ¶ 146.  Approval by a superior officer, as a general matter, weighs in favor of a finding of qualified immunity.  *See*

*Messerschmidt v. Millender*, 565 U.S. 535, 553–54 (2012); *Elkins v. District of Columbia*, 690 F.3d 554, 568 (D.C. Cir. 2012).  This is doubly so in the context of the Executive Branch, where, as the Supreme Court has repeatedly emphasized, Article II contemplates "'a clear and effective chain of command' down from the President." *Arthrex, Inc.*, 141 S. Ct. at 1979 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 498 (2010)).

"Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  *Mitchell*, 472 U.S. at 526; *see also Reichle*, 566 U.S. at 664 ("Courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all.").  Here, Plaintiff has not alleged that Hahn violated clearly established law.  The Court should thus dismiss the claims against Hahn.  *See Ford v. Donavan*, 891 F. Supp. 2d 60, 64–65 (D.D.C. 2012) (Boasberg, J.) (dismissing § 1985 claim based on qualified immunity).

## III.    Plaintiff's Claims Against Hahn Should Be Dismissed With Prejudice.

Plaintiff's claims against Hahn should be dismissed with prejudice because any amendment would be futile.  Rule 15 allows a court to give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  But justice does not require amendment here.  On the contrary, "dismissal *with prejudice* is warranted" where, as here, "'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (per

33

curiam) (quoting *Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)).

Indeed, in the context of lawsuits against government employees, the D.C. Circuit

has been clear that district courts should not "permit [a plaintiff] to file another suit

containing the same worthless claims." *Simpkins v. District of Columbia*, 108 F.3d

366, 370 (D.C. Cir. 1997).

Here, no amendment could alter the reality that Hahn's dissemination of

talking points to the press was protected by the First Amendment (or at least not

clearly established to violate § 1985).  No amendment could obscure the fact that it

would be unprecedented to apply § 1985 in the unique and sensitive context of a

military officer challenging his Commander-in-Chief's views about the proper

performance of his job duties.  And no amendment could transform a congressional

committee into a "court of the United States."  For these and the other reasons set

forth above, Plaintiff's claims against Hahn fail for multiple fundamental legal

reasons that could not be remedied in an amended complaint.  Dismissal with

prejudice is appropriate where an "amended complaint would suffer from the same

flaw as the original complaint." *Carty v. Author Sols., Inc.*, 789 F. Supp. 2d 131, 135–36 (D.D.C. 2011).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims against Hahn with prejudice.

Respectfully submitted,

Dated: May 31, 2022

/s/ Jeffrey S. Bucholtz
Jeffrey S. Bucholtz (D.C. Bar No. 452385)
Amy R. Upshaw (D.C. Bar No. 888156455)
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, D.C.  20006
Telephone: (202) 737-0500
Facsimile: (202) 626-3737
jbucholtz@kslaw.com
aupshaw@kslaw.com

Nicole Bronnimann (TX Bar No. 24109661)
KING & SPALDING LLP
1100 Louisiana Street
Houston, TX 77002
Telephone: (713) 751-3200
Facsimile:  (713) 751-3290
nbronnimann@kslaw.com

*Counsel for Defendant Julia Hahn*

35